**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| **CONNECTICUT HEALTHCARE INSURANCE COMPANY,**[1] | |
| Debtor in Foreign Proceeding. | Case No. 26-32010-15 (SGJ) |

**DECLARATION OF FRANK SAIDARA IN SUPPORT OF APPLYING THE
PROTECTIONS OF THE AUTOMATIC STAY TO THE DEBTOR'S NON-DEBTOR
AFFILIATES**

I, Frank Saidara, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury as follows:

1.      I submit this declaration (this "Declaration") in support of the *Foreign Representatives' Emergency Motion for (A) Provisional Relief Under Section 1519 of the Bankruptcy Code, (B) Extension of the Automatic Stay to Prospect Debtor Defendants, and (C) Granting Related Relief* (the "Motion"),[2] filed contemporaneously herewith, which seeks to apply the protections of the automatic stay to the entities that were debtors in the chapter 11 cases *captioned In re Prospect Medical Holdings, Inc., et al.*, Case No. 25-80002 (Bankr. N.D. Tex.) (the "Prospect Chapter 11 Cases," and such entities, the "Prospect Debtors")—which are the non-Debtor affiliates of Connecticut Healthcare Insurance Company (the "Debtor")—pending the Court's consideration and determination of the Settlement.

---

[1]    The Debtor's mailing address is Marsh Management Services Cayman Ltd., Governors Square, Building 4, Floor 2, 23 Lime Tree Bay Avenue, P.O. Box 1051, Grand Cayman KY1-1102.

[2]    Capitalized terms used but not otherwise defined herein have the meanings ascribed to such terms in the Motion.

2.      Since March 2026, I have been the Plan Administrator in the Prospect Chapter 11 Cases.  Previously, I served as the General Counsel of Prospect Medical Holdings, Inc. ("PMH"), one of the Prospect Debtors.  I held various positions at PMH since joining as Vice President of Corporate Development in February 2012, including serving as the Co-General Counsel and subsequently as sole General Counsel.

3.      Through this experience, I am familiar with and knowledgeable about the Prospect Debtors and the Debtor, including, as applicable, their operations, business and financial affairs, books and records, and the insurance claims processing.

4.      Except as otherwise indicated, all facts set forth in this Declaration are based upon my personal knowledge, my discussions with the Prospect Debtors and the Debtor and their respective management teams and advisors, related discussions, my review of relevant documents and information concerning the Debtor and/or the Prospect Debtors, or my opinions based upon my experience and knowledge.  I am over the age of 18 and authorized to submit this Declaration. If called upon to testify, I could and would testify competently to the facts set forth in this Declaration.

5.      The Debtor, along with the Prospect Debtors and certain of their insurers and reinsurers (the "Settling Insurers") are seeking approval of a settlement as set forth in the Motion (the "Settlement").  For the reasons set forth in the Motion and the relevant pleadings filed or to be filed in the Prospect Chapter 11 Cases, I believe the Settlement is in the best interests of the Debtor and the Prospect Debtors.  One of the primary benefits of the Settlement is that it would establish a pool of funds from the Settling Insurers that would be specifically reserved for the claimants seeking recovery from the insurance policies maintained by the Debtor and the Prospect Debtors.

2

## INSURANCE STRUCTURE

6.     The Prospect Debtors generally maintain self-insured retention obligations ("SIR") under their insurance programs, which function similarly to deductibles.  However, the structure of these obligations differ between Pennsylvania and other states.

7.     In Pennsylvania, prior to October 1, 2020, insurance claims were allocated as follows:  the first $500,000 of liability was insured through Prospect Medical Holdings Risk Retention Group, Inc. ("RRG"), which is a self-insurance program utilized by the Prospect Debtors that manages and administers certain insurance policies.  The next $500,000 of liability on account of an insurance claim would be paid by a special fund within Pennsylvania's State Treasury ("MCare"), subject to certain conditions and limits.  Coverage in excess of RRG coverage and, if not exhausted, MCare, is provided by third-party excess insurers.  However, those excess policies are subject to a $4 million SIR or $5 million SIR, as applicable.

8.     In Pennsylvania, beginning on October 1, 2020, the applicable Prospect Debtors were insured through RRG for the first $500,000 of liability of an insurance claim, subject to a deductible of $250,000.  The next $500,000 of liability on account of an insurance claim would be paid by MCare, subject to certain conditions and limits.  Claim amounts in excess of $1 million (up to a cap of $80 million) are insured through the Debtor, although the applicable Prospect Debtors were subject to an SIR for claim amounts between $1 million and $13.5 million.  Claim amounts exceeding $13.5 million (up to a cap that is typically $80 million) would be covered by the relevant insurance policies with the Debtor; however, the Debtor reinsured such obligations with various third-party insurers.

9.     In states other than Pennsylvania, the applicable Prospect Debtors are responsible for the defense and indemnity payments for each claim up to the applicable SIR (which range from

3

$2 million $7.5 million). After the applicable SIR is paid, the Debtor provides excess healthcare professional liability and umbrella liability insurance policies, on a claims-made basis. The policy limits total $80,000,000, for each loss event and in the annual aggregate, excess of the primary coverage layers described above. This coverage is fully reinsured by third-party carriers.

**BENEFITS OF AUTOMATIC STAY PROTECTIONS FOR THE PROSPECT DEBTORS**

10. The Debtor, as the captive insurance company for the Prospect Debtors (the "Captive"), is experiencing financial distress and is likely insolvent or imminently to be rendered insolvent, which has significantly complicated the administration of the insurance claims involving the Debtor, the Prospect Debtors, and the Settling Insurers. Additionally, in light of how the Debtor and the Prospect Debtors' insurance and reinsurance programs are set up—including the relevant thresholds that shift insurance responsibilities between the Debtor, the Prospect Debtors, and the Settling Insurers (the "Thresholds")—the Settling Insurers are currently the only meaningful source of funds for the insurance claimants as it relates to their respective insurance claims.

11. The insurance claims asserted against the Prospect Debtors and related parties are inextricably intertwined with the insurance policies issued by or for the Debtor, and litigation against such parties would effectively be claims against the Debtor's insurance program and assets. Relevantly, although the Debtor is the Captive, insurance claims are often processed and administered by the applicable Prospect Debtors.

12. The administration of the insurance claims has been an increased administrative burden on the Prospect Debtors, which have limited resources, especially since the Prospect Debtors have emerged from the Prospect Chapter 11 Cases and are in the process of winding down. In addition to financial limitations, in light of the wind-down efforts and various hospital closures,

4

the applicable Prospect Debtors have extremely limited personnel, if any, that are able to respond to requests or handle tasks related to insurance claims.  Therefore, administering the insurance claims—including, but not limited to, responding to the many document and discovery requests, coordinating with the Settling Insurers, physicians, and other related parties, and tracking and addressing the continuing insurance claims and lawsuits—has been increasingly difficult and burdensome, especially as it relates to claims based in Pennsylvania.

13.     Only a small percentage of the insurance claims against the Debtor or the Prospect Debtors are expected to reach the Thresholds that would potentially trigger Settling Insurers' obligations.  As a result, the Debtor and the Prospect Debtors have been forced to spend a disproportionate amount of their extremely limited resources to respond to many discovery requests and other obligations related to many insurance claims that, absent approval of the Settlement, are unlikely to result in recoveries with respect to their claims.

14.     Applying the protections of the automatic stay to the Debtor and the Prospect Debtors for a limited period of time would provide several benefits.  Such benefits include, but are not limited to, (i) allowing the Debtor and the Prospect Debtors to dedicate their limited resources in furtherance of approval of the Settlement, to the benefit of their estates and the insurance claimants, (ii) providing a breathing spell to allow the Court to consider approval of the Settlement in an orderly manner; (iii) preventing the insurance claimants from pursuing other co-defendants—including physicians who are or were employees of (and insured by) certain Prospect Debtors—until the circumstances of such insurance claims are more established (and therefore, more appropriately timed to be addressed); and (iv) avoiding any unintended judgments, including further default judgments, against the Debtor, any Prospect Debtors, and/or, importantly, any other potential co-defendants (including individual physicians, as has been reported in

5

the Steward Case[3] in relation to unsatisfied settlements) (such actual and potential defendants and co-defendants, including the Debtor and any Prospect Debtors, collectively, the "Co-Defendants"),[4] who might be exposed to liability in large part because of the Prospect Debtors' difficulties in adequately responding and addressing certain insurance claims or lawsuits as a result of the limited resources of the Prospect Debtors.

15.     Once the Court determines whether to approve the Settlement, the Debtor and the Prospect Debtors would then have an understanding as to the sum certain of immediately available funds that will be earmarked for the applicable insurance claimants.  In other words, if the Settlement is approved, the Debtor and the Prospect Debtors would have increased clarity as to the insurance claims' recovery pool and, therefore, a better analysis as to how to address such claims (including through settlements).

16.     In conclusion, applying the protections of the automatic stay to the Prospect Debtors would prevent the need to dedicate time and money to administer individual insurance claims (unless and until the Settlement's approval obviates the need to be bound by the Thresholds) and would allow the Debtor and the Prospect Debtors to focus on a crucial piece of the puzzle, which would make the significant effort of administering the insurance claims—including those below the Thresholds—worthwhile for the parties involved.

*[Remainder of Page Intentionally Left Blank.]*

---

[3]     "Steward Case" means *In re Steward Health Care System LLC*, Case No. 24-90213 (Bankr. S.D. Tex.).

[4]     As of the date hereof, at least one default judgment has been entered against certain Co-Defendants.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.


Dated:  May 5, 2026

/s/ Frank Saidara
Frank Saidara
Plan Administrator of Prospect Debtors

7