Vienna F. Anaya (TX Bar No. 24091225)
Emily Meraia (TX Bar No. 24129307)
**JACKSON WALKER LLP**
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
Email: vanaya@jw.com
Email: emeraia@jw.com

and

Scott B. Kitei, Esq. (*pro hac vice* pending)
Glenn S. Walter (*pro hac vice* pending)
**HONIGMAN LLP**
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7000
Email: skitei@honigman.com
Email: gwalter@honigman.com

*Counsel for the Authorized Foreign Representatives*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 15 |
| **CONNECTICUT HEALTHCARE INSURANCE COMPANY,**[1] | |
| Debtor in Foreign Proceeding. | Case No. 26-32010-15 (SGJ) |

**FOREIGN REPRESENTATIVES' EMERGENCY MOTION FOR
(A) PROVISIONAL RELIEF UNDER SECTION 1519 OF THE BANKRUPTCY CODE,
(B) EXTENSION OF THE AUTOMATIC STAY TO PROSPECT DEBTOR
DEFENDANTS, AND (C) GRANTING RELATED RELIEF**

---

[1] The Debtor's mailing address is Marsh Management Services Cayman Ltd., Governors Square, Building 4, Floor 2, 23 Lime Tree Bay Avenue, P.O. Box 1051, Grand Cayman KY1-1102.

75080616.13

EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS REQUESTED NOT LATER THAN 10:30 A.M. (PREVAILING CENTRAL TIME) ON MAY 7, 2026.

IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.

A HEARING WILL BE CONDUCTED ON THE MATTERS SET FORTH IN THIS MOTION ON MAY 7, 2026, AT 10:30 A.M. (PREVAILING CENTRAL TIME) IN EARLE CABELL FEDERAL BUILDING, 1100 COMMERCE STREET, 14TH FLOOR, COURTROOM #1, DALLAS, TEXAS 75242. PARTICIPATION AT THE HEARING WILL ONLY BE PERMITTED BY AN AUDIO AND VIDEO CONNECTION.

AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. THE MEETING CODE IS 2304 154 2638. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE JERNIGAN'S HOME PAGE. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING. WEBEX HEARING INSTRUCTIONS MAY BE OBTAINED FROM JUDGE JERNIGAN'S HEARING/CALENDAR SITE: HTTPS://WWW.TXNB.USCOURTS.GOV/JUDGES-INFO/HEARING-DATES/CHIEF-JUDGE-JERNIGANS-HEARING-DATES.

HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE JERNIGAN'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.

Michael Pearson and Orla O'Regan of JTC Special Situations Limited, solely in their capacities as joint and several provisional liquidators and authorized foreign representatives ("**Foreign Representatives**" or "**JPLs**") of Connecticut Healthcare Insurance Company (the "**Debtor**"), which is the subject of a proceeding captioned *In the Matter of the Companies Act (2026 Revision) and In the Matter of Connecticut Healthcare Insurance Company*, Cause No. FSD 93 of 2026 (JAJ) pending in the Grand Court of the Cayman Islands Financial Services Division (the "**Cayman Proceeding**" and such court, the "**Cayman Court**"), by and through their undersigned counsel respectfully request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "**Order**"), granting provisional relief under title 11 of the United States Code (the "**Bankruptcy Code**") to protect the Debtor and its property within the territorial jurisdiction of the United States pending recognition of the Cayman Proceeding. In support of this

2

75080616.13

motion (the "**Motion**"), the Foreign Representatives rely upon the (a) *Declaration of Michael Pearson Pursuant to 28 U.S.C. §1746,* (the "**Pearson Declaration**"), (b) *Declaration of John Harris* (the "**Harris Declaration**"), (c) *Declaration of Frank Saidara in Support of Applying the Protections of the Automatic Stay to the Debtor's Non-Debtor Affiliates* (the "**Saidara Declaration**"), and (d) *Verified Petition For Entry of an Order (A) Recognizing Foreign Main Proceeding, (B) Extending the Automatic Stay to Prospect Debtor Defendants, and (C) Granting Additional Relief* (the "**Verified Petition**"), and respectfully states as follows:

## I.
## BACKGROUND

1.      The Debtor was incorporated as an exempted company with limited liability under the Companies Act (as amended) of the Cayman Islands. Prospect ECHN, Inc. a Connecticut corporation ("**ECHN**"), is the registered owner of Debtor. ECHN is an indirect wholly owned subsidiary of Prospect Medical Holdings, Inc. ("**Prospect**"). ECHN and Prospect, among other affiliated entities, are debtors ("**Prospect Debtors**") in the bankruptcy cases captioned *In re: Prospect Medical Holdings, Inc. et al*, Case No. 25-80002 (SGJ) (Jointly Administered) pending in the United States Bankruptcy Court for the Northern District of Texas (the "**Prospect Bankruptcy Case**").

2.      The Prospect Debtors were substantial providers of healthcare services in the United States. The Debtor is a Cayman Island domiciled company licensed as a Class B(i) captive insurance company pursuant to the Insurance Act (as amended) of the Cayman Islands that provided insurance policies (the "**CHIC Policies**") to the Prospect Debtors for professional and

3

75080616.13

general liability claims (the "**Insured Claims**") that exceed the self-insured retention ("**SIR**") and which are fully reinsured by third party reinsurers ("**Reinsurers**").[2]

3.      The structure of these obligations differs between Pennsylvania and other states.

4.      In Pennsylvania, prior to October 1, 2020, insurance claims were allocated as follows:  the first $500,000 of liability was insured through Prospect Medical Holdings Risk Retention Group, Inc. ("**RRG**"), which is a self-insurance program utilized by the Prospect Debtors that manages and administers certain insurance policies.  The next $500,000 of liability on account of an insurance claim would be paid by a special fund within Pennsylvania's State Treasury ("**MCare**"), subject to certain conditions and limits.  Coverage in excess of RRG coverage and, if not exhausted, MCare, is provided by third-party excess insurers.  However, those excess policies are subject to a $4 million SIR or $5 million SIR, as applicable.

5.      In Pennsylvania, beginning on October 1, 2020, the applicable Prospect Debtors were insured through RRG for the first $500,000 of liability of an insurance claim, subject to a deductible of $250,000.  The next $500,000 of liability on account of an insurance claim would be paid by MCare, subject to certain conditions and limits.  Claim amounts in excess of $1 million (up to a cap of $80 million) are insured through the Debtor, although the applicable Prospect Debtors were subject to an SIR for claim amounts between $1 million and $13.5 million.  Claim amounts exceeding $13.5 million (up to a cap that is typically $80 million) would be covered by the relevant insurance policies with the Debtor; however, the Debtor reinsured such obligations with various third-party insurers.

---

[2] An illustrative treatment of an Insured Claim and relationship among the Prospect Debtors, Debtor and Reinsurers is set forth on **Exhibit B**.

4

6.      In states other than Pennsylvania, the applicable Prospect Debtors are responsible for the defense and indemnity payments for each claim up to the applicable SIR (which range from $2 million to $7.5 million).  After the applicable SIR is paid, the Debtor provides excess healthcare professional liability and umbrella liability insurance policy, on a claims-made basis.  The policy limits total  $80,000,000, for each loss event and in the annual aggregate, excess of the primary coverage layers described above.  This coverage is fully reinsured by third-party carriers.

7.      Under the CHIC Policies, Prospect, as the primary named insured, is responsible for investigating, administering and defending claims.  However, many of the reinsurance agreements place a duty on the Debtor to investigate and/or defend claims regardless of whether Prospect has done so.

8.      As set forth in the Saidara Declaration, the administration of the insurance claims has been an increased administrative burden on the Prospect Debtors, which have limited resources, especially since the Prospect Debtors have emerged from the Prospect Chapter 11 Cases and are in the process of winding down.  In addition to financial limitations, in light of the wind-down efforts and various hospital closures, the applicable Prospect Debtors have extremely limited personnel, if any, that are able to respond to requests or handle tasks related to insurance claims. Therefore, administering the insurance claims—including, but not limited to, responding to the many document and discovery requests, coordinating with the Settling Insurers, physicians, and other related parties, and tracking and addressing the continuing insurance claims and lawsuits— has been increasingly difficult and burdensome.

9.      As set forth in the Saidara Declaration, if the Insured Claims were properly administered, only a small percentage of the insurance claims against the Debtor or the Prospect Debtors are expected to reach the SIR threshold that would potentially trigger the Debtor or

75080616.13

Reinsurers indemnification obligations. As a result, the Debtor and the Prospect Debtors have been forced to spend a disproportionate amount of their extremely limited resources to respond to many discovery requests and other obligations related to many insurance claims that, absent approval of the Reinsurance Settlement, are unlikely to result in recoveries with respect to their claims.

10.    On the other hand, the Debtor and the Reinsurers were previously provided with a Prospect Reinsurance Claims Analysis produced by Prospect with the assistance of Alvarez and Marsal, dated August of 2025 ("**Claims Summary**").  The Claims Summary provides a summary of, among other things, the amount of liquidated and fully unliquidated proofs of claims filed against the Prospect Debtors that relate to policy years 2016-2025.  On the low end of the range, 26 claims were filed in liquidated amounts in excess of the SIR aggregated to $235,500,000.  On the high end of the range, including estimates for proofs of claim filed in an unliquidated amount, the exposure set forth in the proofs of claim exceeded $1,500,000,000.  Although proofs of claims are not necessarily indicative of the allowable amount of such claims if adjudicated or settled and, are typically more than the actuarial reserves for such claims, the Claims Summary provides insight on the extent to which liability for the Debtor may become astronomical if claims do go undefended.

11.    The Debtor does not have the resources to take over the investigation, administration and defense of such claims.  Specifically, the Debtor's unaudited financial statement as of February 28, 2026, shows available surplus capital of approximately $2,100,000.  Under these circumstances, the Debtor determined it was likely insolvent or to be rendered insolvent in the short term.

6

75080616.13

12.     On March 12, 2026, the Debtor filed a Winding Up Petition and Summons in the Grand Court of the Cayman Islands Financial Services Division seeking, among other things, the provisional administration of the Debtor and appointment of the JPLs.

13.     The Cayman Court has granted the Debtor's request and, by order dated March 18, 2026 (the "**Cayman Order**"), Orla O'Regan and Michael Pearson were appointed as JPLs and duly authorized foreign representatives of the Debtor.

14.     The JPLs on behalf of the Debtor, the Prospect Debtors and the Reinsurers have now reached a settlement in principle (the "**Reinsurance Settlement**") that, if approved and finalized by the Bankruptcy Court, will lead to the Reinsurers making a material cash payment of approximately $26,000,000 to the Prospect Debtors in exchange for a cancellation and settlement of all CHIC Policies and reinsurance policies (other than the 2025-2026 policy year)[3] and release of the Debtor and the Reinsurers for any claims arising from or related to such policies.  The JPLs anticipate that the Prospect Debtors have, or will shortly, each file a motion ("**Settlement Motion**") in their respective bankruptcy cases seeking approval of the  Reinsurance Settlement.

15.     On the date hereof, the Foreign Representatives, on behalf of the Debtor, filed a voluntary petition for relief under chapter 15 of the Bankruptcy Code, thereby commencing the Debtor's chapter 15 case.  In addition, the Foreign Representatives filed the Verified Petition seeking, among other things, recognition by this Court of the JPLs' status as the duly authorized Foreign Representatives of the Debtor and recognition of the Cayman Proceedings as "foreign

---

[3] 3  The 2025–2026 policy year covers the Prospect Debtors' post-bankruptcy period, and claims under such policies are entitled to administrative expense status.  At this time, the parties have not been able to reach a settlement with respect to the policies for such policy year.

75080616.13

main proceeding". The Debtor is also seeking to extend the automatic stay to cover the Prospect Debtors pending the Bankruptcy Court's consideration of the Settlement Motion.[4]

16. A comprehensive description of the Debtor's business and operations, the Cayman Proceedings, and the factual background leading to the commencement of these chapter 15 cases is set forth in detail in the Verified Petition and in the Pearson Declaration, both of which were filed contemporaneously herewith and are incorporated herein by reference.

17. Emergency relief is necessary for the interim period between the commencement of the chapter 15 cases and the hearing on the Verified Petition (the "**Recognition Hearing**"), to prevent parties in interest from taking action against the Debtor or against its assets in the United States, each of which could prejudice or disrupt the pursuit and implementation of the orderly winding up efforts in the Cayman Proceeding.

18. To provide the Debtor with the breathing room and stability necessary to administer the Cayman Proceeding, the JPLs seek a stay of creditor actions against the Debtor and its property and an extension of the Court's injunction as granted in the Cayman Order to enjoin actions against the Debtor and its property, in each case, within the territorial jurisdiction of the United States pending the Recognition Hearing. Further, because the Debtor indemnifies and insures the Prospect Debtors, the Prospect Debtors share an identity of interest with the Debtor that justifies a temporary extension of the automatic stay.

19. The requested provisional relief is necessary to advance a key objective of chapter 15 to protect and maximize the value of the Debtor's assets and to ensure the equal treatment of similarly situated creditors. Without the requested provisional relief, there is a risk that the

---

[4] The Court lifted the automatic stay in the Prospect Bankruptcy Case to allow holders of Insured Claims to liquidate their claims to final judgment pursuant to the Bankruptcy Court's *Order Granting Emergency Motion for Relief from Automatic Stay Filed by the Debtor* [Docket No. 3628].

75080616.13

Debtor's creditors could seek to invoke self-help remedies or commence enforcement actions against the Debtor's assets in the United States in an attempt to gain an unfair advantage at the expense of the Debtor's other creditors.

## II.
## JURISDICTION AND VENUE

20.     This chapter 15 case has been properly commenced under § 1504 by the filing of petitions for recognition of the Cayman Proceeding under § 1515.

21.     The United States Bankruptcy Court for the Northern District of Texas (the **"Court"**) has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b)(2)(P).

22.     Venue is proper pursuant to 28 U.S.C. § 1410.

23.     The Debtor, as represented by the Foreign Representatives, confirms its consent, pursuant to Rule 7008 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), to the entry of a final order by the Court to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

24.     The statutory bases for the relief requested herein are found at §§ 105(a), 362, 1519, and 1521 of the Bankruptcy Code and Bankruptcy Rule 7056.

## III.
## RELIEF REQUESTED

25.     Pursuant to §§ 105(a), 1519, and 1521, the Foreign Representatives respectfully request that the Court enter the Order, substantially in the form attached hereto as **Exhibit A**, granting the following provisional relief pending recognition of the Cayman Proceeding:

> (a)     recognizing and enforcing the Cayman Order on a provisional basis with respect to the Debtor and its property located in the territorial jurisdiction of the United States;

75080616.13

(b)     (i) applying § 362 of the Bankruptcy Code to the Debtor and its property within the territorial jurisdiction of the United States and (ii) extending the Cayman Court's injunction as granted in the Cayman Order to enjoin actions against the Debtor and its property within the territorial jurisdiction of the United States. For the avoidance of doubt and without limiting the generality of the foregoing, the Order shall impose a stay prohibiting all persons and entities, other than the Foreign Representatives and their representatives and agents, from:

    (i)     commencing or continuing any suit, action, or proceeding inconsistent with the Cayman Proceeding, including, without limitation, any judicial, quasi-judicial, regulatory, administrative, or other action or proceeding involving or against the Debtor, its assets, or the proceeds thereof;

    (ii)     seizing, attaching, enforcing, or executing any judgment, assessment, order, lien or arbitration award against the Debtor's assets in the United States (if any) or the proceeds thereof; and

    (iii)     transferring, encumbering, or otherwise disposing of or interfering with the Debtor's assets or agreements in the United States (if any) without the express consent of the JPLs or as permitted by the Cayman Order;

(c)     extending § 362 of the Bankruptcy Code to the Prospect Debtors. For the avoidance of doubt and without limiting the generality of the foregoing, the Order shall impose a stay prohibiting all holders of Insured Claims and their representatives and agents, from commencing or continuing any suit, action, or proceeding inconsistent, including, without limitation, any judicial, quasi-judicial, regulatory, administrative, or other action or proceeding involving or against the Prospect Debtors, their assets, or the proceeds thereof.

(d)     transferring, encumbering, or otherwise disposing of or interfering with the Debtor's assets or agreements in the United States (if any) without the express consent of the JPLs or as permitted by the Cayman Order;

(e)     recognizing the JPLs as the foreign representatives of the Debtor in this chapter 15 case;

(f)     granting the JPLs the rights and protections to which the JPLs are entitled under chapter 15 of the Bankruptcy Code, including the protections limiting the jurisdiction of United States Courts over the JPLs in accordance with § 1510 and the granting of additional relief in accordance with §§ 1519(a)(3) and 1521;

(g)     providing that notwithstanding any provision in the Bankruptcy Rules to the contrary, (i) the Order shall be effective immediately and enforceable upon

10

75080616.13

entry, (ii) the JPLs are not subject to any stay in the implementation, enforcement, or realization of the relief granted in the Order, and (iii) the JPLs are authorized and empowered, and may, in their discretion and without further delay, take any action and perform any act necessary to implement and effectuate the terms of the Order;

(h)     granting such other and further relief as this Court deems just and proper.

## IV.
## BASIS FOR RELIEF

**A.     Sections 105 and 1519(a) Authorize the Requested Provisional Relief**

26.     The JPLs filed this chapter 15 case seeking recognition of the Cayman Proceeding under § 1517. Section 1519 permits the Court "from the time of filing a petition for recognition until [it] rules on the petition" to grant broad provisional relief pending recognition of the foreign proceeding where such relief is "urgently needed to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1519(a). Section 1519(a) describes the scope of available provisional relief, which includes, without limitation:

(a)     staying execution of the Debtor's assets;

(b)     entrusting the administration or realization of all or part of the Debtor's assets located in the United States to the foreign representatives or another person authorized by the court, including an examiner, in order to protect and preserve the value of assets that, by their nature or because of other circumstances, are perishable, susceptible to devaluation or otherwise in jeopardy; and

(c)     any relief referred to in §§ 1521(a)(3), (4), or (7).

27.     The JPLs seek provisional relief under §§ 105(a) and 1519(a) of the Bankruptcy Code. Among other things, they seek the imposition of the automatic stay pursuant to § 362 of the Bankruptcy Code and for the purpose of maintaining the status quo until the Recognition Hearing. The JPLs also seek the continuation of the automatic stay pursuant to § 1521(a)(1) of the Bankruptcy Code upon entry of the Recognition Order.

11

75080616.13

28.     The provisional relief sought herein implements the policies underlying chapter 15 of the Bankruptcy Code, including by (a) promoting cooperation between courts of the United States and courts of foreign jurisdictions involved in cross-border insolvencies and restructurings, (b) ensuring the "fair and efficient administration of cross-border [cases] that protects the interests of all creditors, and other interested entities," including the Debtor, and (c) protecting and maximizing the value of the Debtor's assets. 11 U.S.C. § 1501(a)(3) and (4).

29.     Indeed, the provisional relief requested is of a type regularly granted in chapter 15 cases. Bankruptcy courts have imposed the § 362 automatic stay or ordered similar relief to maintain the status quo pending a hearing on recognition of the foreign proceedings.

**B.      Provisional Relief Is Necessary to Protect the Debtor's Assets and Restructuring Efforts**

30.     A foreign representative is not, by virtue of filing a petition to commence a chapter 15 case, entitled to the application of those Bankruptcy Code provisions that automatically provide a debtor under other chapters of the Bankruptcy Code with expansive relief. Rather, it is only upon the recognition of a foreign proceeding that the Bankruptcy Code's automatic relief applies to a chapter 15 case. Although "[a] petition for recognition of a foreign proceeding shall be decided upon at the earliest possible time[,]" there is necessarily a gap between the time such petition for recognition is filed and the time the court makes a decision on whether a proceeding should be recognized. 11 U.S.C. § 1517(c). During this interim period, provisional relief may be available to protect a debtor, its assets, and the interests of all stakeholders. *See* 11 U.S.C. § 1519(a). Indeed, provisional relief should be granted "where relief is urgently needed to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1519(a).

31.     Absent provisional relief, individual actions brought by creditors or other parties in interest could interfere with the orderly proceedings underway in the Cayman Court and may place

12

at risk the Debtor's ability to successfully reorganize. *See, e.g., In re Garcia Avila*, 296 B.R. 95, 114 (Bankr. S.D.N.Y. 2003) (former § 304 case finding that irreparable harm would exist by "[p]ermitting the [creditors] to execute their judgments against the bond proceeds [which would] diminish the recovery available to other creditors and possibly wreck the reorganization efforts."). Here, as described in greater detail in the Verified Petition and the Pearson Declaration, the Debtor is facing litigation in the United States both directly and indirectly by holders of Insured Claims, and the holders of Insured Claims may take immediate action to obtain and enforce a judgment against the Debtor and its assets. This piecemeal litigation would circumvent the effective administration of the Cayman Proceeding to the detriment of the restructuring process, the Debtor, and all other creditors and parties in interest.

32. As set forth in more detail below, temporarily extending the stay to enjoin the holders of Insured Claims from commencing or continuing any suit, action, or proceeding against the Debtor and Prospect Debtors is warranted here. Such relief is necessary to effectuate the purpose of chapter 15 and to protect the assets of the Debtor or the interests of the creditors. *See* 11 U.S.C. § 1521(a). Accordingly, the Court should order the Debtor's requested provisional relief, including a temporary stay pending the Court's decision to recognize the Cayman Proceeding.

**C. The Requested Relief Meets the Standards for a Preliminary Injunction**

33. Provisional relief under chapter 15 of the Bankruptcy Code is conditioned on a foreign representative demonstrating that a debtor meets the standards applicable to an injunction. *See* 11 U.S.C. § 1519(e) ("[t]he standards, procedures, and limitations applicable to an injunction shall apply to relief under this section."). In the Fifth Circuit, the general standards for injunctive relief requires a showing of the following elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is not issued; (3) that the threatened injury to the movant outweighs any damage the injunction might

13

75080616.13

cause the opponent; and (4) that the injunction will not disserve the public interest. *Palmer v. Waxahachie Indep. Sch. Dist.*, 579 F.3d 502, 506 (5th Cir. 2009) (quoting *Byrum v. Landreth*, 566 F.3d 442, 445 (5th Cir. 2009)); *Blue Bell Bio-Medical v. Cin-Bad, Inc.*, 864 F.2d 1253, 1256 (5th Cir. 1989).[5]

34.     In evaluating these four factors, courts take a "flexible approach and no one factor is determinative." *Nevada Power Co. v. Calpine Corp. (In re Calpine Corp.)*, 365 B.R. 401, 409 (S.D.N.Y. 2007) (internal quotations omitted) (quoting *Haw. Structural Ironworkers Pension Trust Fund v. Calpine Corp.*, Case No. 06 5358, 2006 WL 3755175, at *4 (S.D.N.Y. Dec. 20, 2006)). These four factors are met here.

i.     <u>The JPLs Have a Substantial Likelihood of Success on the Merits</u>

35.     The JPLs have a substantial likelihood to succeed on the merits and obtain recognition of the Cayman Proceeding under chapter 15 of the Bankruptcy Code. For the reasons stated in the Verified Petition, the JPLs have demonstrated that the Cayman Proceeding is a foreign main proceeding as defined in § 1502(4) of the Bankruptcy Code, and that the JPLs are the proper foreign representatives, as defined in § 101(24) of the Bankruptcy Code. Cayman Proceedings have been recognized as foreign proceedings by courts nationwide within the meaning of the Bankruptcy Code. Thus, the likelihood of success on the underlying merits here is high. *See, e.g., In re LM Fund One Limited (In Official Liquidation)*, Case No. 24-19181-LMI (Bankr. S.D. Fla. Oct. 2, 2024) [Docket No. 15] (recognizing Cayman Proceeding commenced under Cayman Order

---

[5] Additionally, Bankruptcy Rule 7065 expressly provides that "on application of a debtor, trustee, or debtor in possession, the court may issue a temporary restraining order or preliminary injunction without complying with subdivision (c) of [Fed. R. Civ. P 65]."

75080616.13

as a foreign main proceeding); *In re Farfetch Limited (In Official Liquidation),* Case No. 24-11519

(CTG) (Bankr. D. Del. Aug. 5, 2024) [Docket No. 46] (same).

36.    Specifically,

(a)    this chapter 15 case was duly and properly commenced by filing the Verified Petition and the Form 401 petition accompanied by all fees, documents, and information required by the Bankruptcy Code and the Bankruptcy Rules including: (a) a corporate ownership statement containing the information described in Bankruptcy Rule 7007.1; (b) a list containing (i) the names and addresses of all persons or bodies authorized to administer foreign proceedings of the Debtor, (ii) all parties to litigation pending in the United States in which the Debtor is a party at the time of the filing of the Verified Petition, and (iii) all entities against whom provisional relief is being sought under § 1519;[6] (c) a statement identifying all foreign proceedings with respect to the Debtor that are known to the JPLs; and (d) a copy of the as-entered Cayman Order;

(b)    the Debtor is a proper debtor in the Cayman Proceeding;

(c)    the JPLs are the proper foreign representatives, as defined in § 101(24) because they are a "person or body," as defined under § 101(41), which has also been authorized in the Cayman Proceeding to act as the Debtor's foreign representatives; and

(d)    the Cayman Proceeding is a "foreign main proceeding" as defined in § 101(23) as there is a compelling case for recognition of the Cayman Proceeding as foreign main proceedings given that the Debtor is an entity formed under the laws of the Cayman Islands with its registered office in the Cayman Islands and, in the absence of evidence to the contrary, a debtor's center of main interest for purposes of determining whether a foreign proceeding is a "foreign main proceeding" is the location of its registered office. Additionally, the Pearson Declaration establishes that the Debtor (a) is regulated as a Cayman insurer by the Cayman Islands Monetary Authority, (b) operations are carried out through its designated insurance manager, Marsh Management Services Cayman Ltd., (c) the books and records of the Debtor, as well as certain of its bank accounts and assets, are located in Cayman, and (d) all meetings and other business was

---

[6] Contemporaneously with filing the petition for recognition, the Foreign Representatives are filing the *Emergency Motion For Entry of an Order (I) Scheduling Recognition Hearing, (II) Specifying Form and Manner of Service of Notice, (III) Authorizing Redaction of Certain Personally Identifiable Information, and (IV) Granting Related Relief*, which, among other things, requests that the Court enter an order allowing the Debtor to redact certain personally identifiable information and authorizing the implementation of procedures to protect confidential information.

75080616.13

conducted in the Cayman Islands pursuant to the Cayman regulatory framework.

37.     Upon recognition of the Cayman Proceeding as a foreign main proceeding, § 1520(a) of the Bankruptcy Code entitles the Debtor to certain automatic relief, including the application of the automatic stay provided by § 362 of the Bankruptcy Code. 11 U.S.C. § 1520(a). In addition, upon recognition of a foreign proceeding (whether main or non-main), § 1521(a) authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representatives "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[.]" including:

(a)     staying the commencement or continuation of an individual action or proceeding concerning the debtor's assets, rights, obligations or liabilities to the extent they have not been stayed under § 1520(a);

(b)     staying execution against the debtor's assets to the extent it has not been stayed under § 1520(a);

(c)     suspending the right to transfer, encumber or otherwise dispose of any assets of the debtor to the extent this right has not been suspended under § 1520(a); and

(d)     granting any additional relief that may be available to a trustee, except for relief available under §§ 522, 544, 545, 547, 548, 550, and 724(a).

11 U.S.C. § 1521(a).

38.     The Court may grant relief under § 1521 of the Bankruptcy Code if the interests of "the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. § 1522(a). Additionally, § 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). In the Verified Petition, the Debtor requests that the Court exercise its discretion to grant relief similar to the provisional relief on a final basis. The granting of additional relief is consistent with the goals of international cooperation and assistance to

16

75080616.13

foreign courts embodied in chapter 15 of the Bankruptcy Code, and is necessary to administer the Cayman Proceeding.

39.     The requested relief is authorized by this Court's discretionary authority under § 1519 of the Bankruptcy Code and reflects the application of the principles of comity as it is consistent with the relief provided by the Cayman Order. Comity is a central tenet of chapter 15. *Ad Hoc Grp. of Vitro Noteholders v. Vitro SAB De CV (In re Vitro SAB De CV)*, 701 F.3d 1031, 1053 (5th Cir. 2012). The United States Supreme Court defines comity as "the recognition which one nation allows within its territory to the legislative, executive or judicial acts of another nation, having due regard both to international duty and convenience, and to the rights of its own citizens or of other persons who are under the protection of its laws." *Hilton v. Guyot*, 159 U.S. 113, 164 (1895).

40.     The extension of comity to orders issued by Cayman courts in proceedings commenced under the Cayman Order is common in courts across the country. *See*, *e.g., Modern Land (China) Co., Ltd.,* 641 B.R. at 768, 787–93 (Bankr. S.D.N.Y. 2022) (recognizing Cayman Islands proceeding as foreign main proceeding); *Ascot Fund Limited*, 603 B.R. 271, at 279–86 (Bankr. S.D.N.Y. 2019) (recognizing Cayman Islands liquidation of solvent debtor as foreign main proceeding); *In re LM Fund One Limited (In Official Liquidation)*, Case No. 24-19181-LMI (Bankr. S.D. Fla. Oct. 2, 2024) [Docket No. 15]; *In re Farfetch Limited (In Official Liquidation),* Case No. 24-11519 (CTG) (Bankr. D. Del. Aug. 5, 2024) [Docket No. 46] (same); *In re VPC Impact Acquisition Holdings II Ltd. (In Official Liquidation)*, Case No. 23-11551 (MEW) (Bankr. S.D.N.Y. Oct. 25, 2023) (Docket No. 17) (recognizing Cayman Islands liquidation as foreign main proceeding); *In re Touradji Private Equity Master Fund Ltd., et al.* (in Official Liquidation), Case No. 23-10172 (PB) (Bankr. S.D.N.Y. Mar. 3, 2023) [Docket No. 43] (recognizing Cayman Islands

75080616.13

liquidation of solvent debtor as foreign main proceeding); *In re HG Global Trade Finance Fund, Ltd.*, Case No. 20-10132 (MEW) (Bankr. S.D.N.Y. Feb. 19, 2020) [Docket No. 9] (recognizing Cayman Islands liquidation as foreign main proceeding).

41.     Accordingly, there is a substantial likelihood that relief under § 1521(a)(1) of the Bankruptcy Code will be granted, thereby resulting in the application of relief similar to the provisional relief the Motion requests on a final basis.  Courts within the Fifth Circuit have granted provisional and final relief similar to the provisional relief sought by this Motion.

ii.     <u>There Is a Substantial Threat of Irreparable Harm if the Provisional Relief Is Not Granted</u>

42.     If the JPLs' authority is not honored in the United States, or if creditors or parties in interest take collection actions, the ordinary course operations of the Debtor and the JPLs' ability to conduct and effectuate the wind-down through the Cayman Proceeding could be jeopardized. *See, e.g., In re Netia Holdings S.A.*, 278 B.R. 344, 352 (Bankr. S.D.N.Y. 2002) ("It is well established . . . that the dissipation of the finite resources of an insolvent estate constitutes irreparable injury.").

43.     Without recognition and enforcement of the Cayman Order the JPLs could be frustrated from performing their duties.  For example, if a litigation action is commenced against the Debtor, the attention of the JPLs and the Debtor's limited financial resources will have to be redirected to addressing such proceeding.  Courts have previously recognized that absent a stay prohibiting the commencement or continuation of proceedings, irreparable harm could result. *See Calpine Corp. v. Nev. Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 48–50 (Bankr. S.D.N.Y. 2006) (finding debtor would suffer irreparable harm to its reorganization if litigation was not stayed).  The Debtor, and in turn its creditors, risks immediate and irreparable harm if the requested relief is not granted.  Creditors or other parties in interest may take unilateral collection or

18

enforcement actions against the assets of the Debtor in the United States (and thereby gain an unfair advantage over similarly situated creditors). *In re MMG, LLC*, 256 B.R. 544, 555 (Bankr. S.D.N.Y. 2000) ("[I]rreparable harm exists whenever local creditors of the foreign debtor seek to collect their claims or obtain preferred positions to the detriment of other creditors."); *In re Gercke*, 122 B.R. 621, 626 (Bankr. D.C. 1991) (stating that harm to an estate exists where orderly determination of claims and fair distribution of assets are disrupted); *In re Petition of Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr. S.D.N.Y. 1988) (stating that injunctive relief is necessary "to prevent individual American creditors from arrogating to themselves property belonging to the creditors as a group."). Therefore, the provisional relief is necessary on an immediate basis to protect against potential destruction of asset value and disruption to business operations and absent this relief the Debtor's estate will suffer irreparable harm.

### iii. The Threatened Injury to the Debtor Outweighs Any Damage the Provisional Relief Would Cause a Creditor

44. The substantial threat of harm and injury to the Debtor outweighs any damage the Order might cause to parties in interest. The Order seeks to maintain the status quo with respect to the Debtor's assets and operations, so that the Debtor can ensure there is a fair and equitable process that provides for an orderly distribution of assets. *See, e.g.*, *In re Basis Yield Alpha Fund (Master)*, No. 07-12762 (REG) (Bankr. S.D.N.Y. Aug. 29, 2007) [Docket No. 5] (stating that failing to issue a restraining order against creditors could "undermine the Foreign Representatives' efforts to achieve an equitable result for the benefit of all of the Foreign Debtor's creditors."). Ultimately, these actions benefit the Debtor's stakeholders as a whole. *See In re Innua Canada Ltd.*, 2009 WL 1025088, at *4 (Bankr. D.N.J. Mar. 25, 2009) (finding that temporarily maintaining the status quo pending recognition of the foreign proceedings would benefit creditors "by allowing

75080616.13

for an orderly administration of the Foreign Debtors' financial affairs under the Canadian Proceeding.").

45.     Any harm caused to any particular party in interest by the relief requested in the Order is minimal, temporary in nature, subject to the right of such party in interest to appear before this Court to request relief from the Order and may be addressed through the party in interest's participation in the Cayman Proceeding.  Accordingly, creditors' rights are sufficiently protected. The balance of harms is tipped in favor of the JPLs as the harm to the Debtor and its assets that would occur absent entry of the Order is far greater than any potential prejudice to stakeholders that might wish to pursue individual remedies in the United States, in contravention of the Cayman Order.

iv.     The Provisional Relief Will Not Disserve the Public Interest

46.     The provisional relief will not disserve the public interest.  To the contrary, granting the relief serves the public interest because it facilitates a cross-border wind-down that will provide a benefit to the Debtor's creditors and other stakeholders. *See Rehabworks, Inc. v. Lee (In re Integrated Health Servs., Inc.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("In the context of a bankruptcy case, promoting a successful reorganization is one of the most important public interests."); *Lazarus Burman Assocs. v. National Westminster Bank USA (In re Lazarus Burman Assocs.)*, 161 B.R. 891, 901 (Bankr. E.D.N.Y. 1993) ("The public interest, in the context of a bankruptcy proceeding, is in promoting a successful reorganization."). Moreover, granting the provisional relief is in the public interest because it promotes cooperation between jurisdictions in cross-border insolvencies, which is an express purpose of chapter 15 of the Bankruptcy Code. 11 U.S.C. § 1501(a); *see also In re ABC Learning Centers Ltd.*, 728 F.3d 301, 306 (3d Cir. 2013) (emphasizing that chapter 15 serves the "universalism" approach to transnational bankruptcy, preferring that courts in the United States act in aid of foreign proceedings).

75080616.13

47.     The provisional relief sought would cause little harm, if any, to creditors and other parties in interest as it would be temporary, pending the Recognition Hearing, and would not hamper the ability of parties in interest to assert their rights in the Cayman Proceeding. Even so, that certain creditors "may be denied an advantage over the debtor's other . . . creditors is not a valid reason to deny relief to the foreign representative." *In re Atlas Shipping A/S*, 404 B.R. 726, 742 (Bankr. S.D.N.Y. 2009).   The harm to the Debtor and its assets that would occur absent granting the provisional relief would be far greater than any potential prejudice to stakeholders that might wish to pursue their individual remedies in the United States in disregard of the Cayman Proceeding.

**D.     Additional Relief to Temporarily Extend the Automatic Stay to the Prospect Debtors is Appropriate**

48.     As set forth above, upon recognition as a foreign main proceeding, under §1520(a) of the Bankruptcy Code the automatic stay provided by § 362 of the Bankruptcy Code applies to the debtor and its property that is within the territorial jurisdiction of the United States. 11 U.S.C. § 1520(a).  In addition, upon recognition of a foreign proceeding (whether main or non-main), § 1521(a) of the Bankruptcy Code authorizes the Court to grant "any appropriate relief" at the request of the recognized foreign representatives "where necessary to effectuate the purpose of [chapter 15] and to protect the assets of the debtor or the interests of the creditors[.]" 11 U.S.C. § 1521(a).

49.     Although the automatic stay under § 362 of the Bankruptcy Code typically applies only to debtors, Fifth Circuit precedent is clear that bankruptcy courts may extend the automatic stay to non-debtors if "there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor." *Reliant Energy Servs., Inc.*

21

*v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (quoting *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986)) (noting that extension of the automatic stay to a non-debtor party is warranted where a contract imposes joint liability between a non-debtor party and debtor, and thus an identity of interests exists).

50.     In the Fifth Circuit, a shared identity of interests exists between non-debtor parties and the debtor where "allegations raised against co-defendants are 'inextricably interwoven' with claims against the debtor, such that severance of the claims would be inappropriate." *Gigi's Cupcakes, LLC v. 4 Box LLC*, No. 3:17-CV-3009-B, 2019 U.S. Dist. LEXIS 67670, at *12, 2019 WL 1767003, at *3 (N.D. Tex. Apr. 22, 2019) (internal citation omitted); *see also Nat'l Oilwell Varco, L.P. v. Mud King Prods.*, No. 4:12-3120, 2013 U.S. Dist. LEXIS 66152, at **8, 19, 2013 WL 1948766, at **2, 5 (S.D. Tex. May 9, 2013) (staying action against non-debtors because debtor's indemnification obligations to third parties created an identity of interest). "Fifth Circuit precedent . . . allows a court to extend the automatic stay . . . by applying the 'identity of interest' exception in cases in which a contractual indemnification agreement exists between a debtor and non-debtor defendant." *Am. Honda Fin. Corp. v. Salyer*, No. 3:03-cv-651, 2007 WL 1158114, at *3 (S.D. Miss. Apr. 18, 2007).

51.     Under the CHIC Policies, the Debtor is obligated to indemnify the Prospect Debtors for professional and general liability claims that exceed the SIR.  Therefore, the Debtor and the Prospect Debtors share an identity of interests because the plaintiffs' Insured Claims against the Prospect Debtors, to the extent the asserted amount of the claims exceeds the SIR, are claims against the Prospect Debtor in all but name only, rendering the Debtor the real party in interest.

52.     Indeed, courts in this circuit have routinely extended the automatic stay to non-debtors to whom the debtors owed indemnity obligations. *See, e.g., In re Wellpath Holdings, Inc.*

22

75080616.13

*et al.*, Case No. 24-90533 (ARP) (Bankr. S.D. Tex. Feb. 20, 2025) [Docket No. 1480] (extending the automatic stay to non-debtor parties, including employees, independent medical professionals, and customers and clients, to whom the debtors owed indemnity obligations); *In re Envision Healthcare Corporation et al.*, Case No. 23-90342 (CML) (Bankr. S.D. Tex. May 15, 2023) [Docket No. 106] (extending the automatic stay to non-debtor parties to whom the debtors owe indemnity obligations); *In re 4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. May 24, 2018) [Docket No. 428].

53. Likewise, the Court may also extend the automatic stay to litigation that "could interfere with the reorganization of the debtor" or "would interfere with, deplete or adversely affect property of the estates or which would frustrate the statutory scheme of chapter 11 or diminish the debtor's ability to formulate a plan of reorganization." *In re W.R. Grace & Co.*, 115 F. App'x 565, 570 (3rd Cir. 2004) (quoting A.H. Robins, 828 F.2d at 1025 and *In re Johns-Manville*, 26 B.R. 420, 436 (Bankr. S.D.N.Y. 1983) (internal quotations omitted); *see also In re McConathy*, No. 90-13449, 2021 Bankr. LEXIS 1569, at *10, 2021 WL 2405734, *4 (Bankr. W.D. La. June 11, 2021) ("It is widely recognized that actions involving non-debtors that would have an 'adverse impact' upon the property of the estate are subject to the automatic stay under [Bankruptcy Code] § 362(a)(3).").

54. Here, any claims in excess of the SIR would create claims against the Debtor that would frustrate the ability of the Debtor to wind-down through the Cayman Proceeding. As a result of the Prospect Bankruptcy Case, Prospect is unable to investigate, administer or defend claims against it. In these circumstances a proliferation of default judgments appears to be inevitable. If the cases are not properly defended, it is likely that claims that otherwise could have been defended or settled will breach the SIR to the detriment of all holders of valid catastrophic

23

claims, and the failure to defend will provide potential coverage defenses to the Reinsurers. Therefore, the available assets to satisfy claims will be both diluted and potentially extinguished.

55.     To avoid this outcome, the Debtor, the Prospect Debtors, and the Reinsurers have reached the Reinsurance Settlement, an agreement in principle.  By virtue of the Reinsurance Settlement, the Debtor will be able to continue the process of an orderly wind-down under Cayman Islands Law by extinguishing liability for the policy years covered by the Reinsurance Settlement. The Reinsurance Settlement will provide a set pool of assets that can be orderly administered by the Plan Administrator on behalf of the Prospect Debtors to the benefit of all stakeholders.  Under these circumstances, a temporary stay of the Insured Claims pending the Bankruptcy Court consideration of the Settlement Motion and adoption by the Prospect Debtors of claim resolution procedures is justified and supported by Fifth Circuit law.

56.     Further, the stay would benefit the administration of the Prospect Debtors' confirmed plan of reorganization.  The administration of the insurance claims has been an increased administrative burden on the Prospect Debtors, which have limited resources, especially since the Prospect Debtors have emerged from the Prospect Bankruptcy Case and are in the process of winding down.  In addition to financial limitations, in light of the wind-down efforts and various hospital closures, the applicable Prospect Debtors have extremely limited personnel, if any, that are able to respond to requests or handle tasks related to insurance claims.  Therefore, administering the insurance claims—including, but not limited to, responding to the many document and discovery requests, coordinating with the Reinsurers, physicians, and other related parties, and tracking and addressing the continuing insurance claims and lawsuits—has been increasingly difficult and burdensome, especially as it relates to claims based in Pennsylvania.

75080616.13

57.     Only a small percentage of the insurance claims against the Debtor or the Prospect Debtors are expected to reach the thresholds that would potentially trigger the Reinsurers obligations.  As a result, the Debtor and the Prospect Debtors have been forced to spend a disproportionate amount of their extremely limited resources to respond to many discovery requests and other obligations related to many insurance claims that, absent approval of the Reinsurance Settlement, are unlikely to result in recoveries with respect to their claims.

58.     Applying the protections of the automatic stay to the Debtor and the Prospect Debtors for a limited period of time would provide several benefits.  Such benefits include, but are not limited to, (i) allowing the Debtor and the Prospect Debtors to dedicate their limited resources in furtherance of approval of the Reinsurance Settlement, to the benefit of their estates and the insurance claimants, (ii) providing a breathing spell to allow the Court to consider approval of the Reinsurance Settlement in an orderly manner; (iii) preventing the insurance claimants from pursuing other co defendants—including physicians who are or were employees of (and insured by) certain Prospect Debtors—until the circumstances of such insurance claims are more established (and therefore, more appropriately timed to be addressed); and (iv) avoiding any unintended judgments, including further default judgments, against the Debtor, any Prospect Debtors, and/or, importantly, any other potential co defendants (including individual physicians, as has been reported in the Steward Case[7] in relation to unsatisfied settlements) (such actual and potential defendants and co defendants, including the Debtor and any Prospect Debtors, collectively, the "Co-Defendants"),[8]  who might be exposed to liability in large part because of

---

[7] "Steward Case" means *In re Steward Health Care System LLC*, Case No. 24-90213 (Bankr. S.D. Tex.).

[8]  As of the date hereof, at least one default judgment has been entered against certain Co-Defendants.

25

the Prospect Debtors' difficulties in adequately responding and addressing certain insurance claims or lawsuits as a result of the limited resources of the Prospect Debtors.

## E. All Parties are Sufficiently Protected

59. As required under § 1522(a) of the Bankruptcy Code, the Court may grant relief under § 1519 of the Bankruptcy Code only if all parties are "sufficiently protected." 11 U.S.C. § 1522(a). Determining whether all parties are "sufficiently protected" involves a balancing test. *In re Sanjel (USA) Inc.*, No. 16-50778 (CAG), 2016 WL 4427075, at *5 (Bankr. W.D. Tex. July 28, 2016) ("In judging whether relief should be modified pursuant to § 1522(a), courts have engaged in a balancing of the relative hardships to the parties when considering whether the interests of interested parties are sufficiently protected."). Further, the legislative history behind § 1522 of the Bankruptcy Code makes clear that Congress intended to give bankruptcy courts "broad latitude to mold relief to meet specific circumstances. . . ." H. Rep. No. 109-31, 109th Cong., 1st Sess. 116 (2005).

60. As described above, the provisional relief is to preserve the status quo and imposes minimal hardship on any party that is not significantly outweighed by the benefits to the Debtor and all parties in interest pending the Court's ruling on recognition. The provisional relief does not affect a creditor's right to participate in the Cayman Proceeding, nor does it alter or affect the priority or validity of any creditor's claims (something that, by contrast, would happen if creditors were to obtain default judgments). Additionally, the § 362 stay is accompanied by its own mechanism to protect parties in interest, e.g., the opportunity to seek relief from the stay for cause under § 362(d)(1) of the Bankruptcy Code. Accordingly, creditors or other interested parties are sufficiently protected by the Cayman Court and this Court.

26

75080616.13

**F.      The Requirements of Bankruptcy Rule 1007(a)(4)(B) Should Be Waived**

61.     Bankruptcy Rule 1007(a)(4)(B) requires a list of all entities against whom provisional relief is being sought under § 1519, unless the court orders otherwise. The relief sought herein could affect other parties to the extent such parties could seek to commence litigation against the Debtor or commence enforcement actions against its property. In other words, it is possible that unknown parties may be affected by the relief sought herein. *See In re Andrade Gutierrez Engenharia S.A.*, 645 B.R. 175, 184 (Bankr. S.D.N.Y. 2022) (holding that the foreign representative cannot be expected to anticipate every potential party that could seek to bring claims against them in the United States).

62.     Further, the JPLs have filed such a partial list with respect to the Debtor in the Debtor's petition.  However, contemporaneously with filing the Verified Petition, the JPLs are filing a motion to redact certain personally identifiable information and authorizing the implementation of procedures to protect confidential information of holders of Insured Claims. The list of holders of Insured Claims shall be maintained in accordance with any order entered by this Court in respect of the foregoing.  Out of an abundance of caution, and given that other, unknown parties may be affected, the JPLs request that the Court waive any further requirement under Rule 1007(a)(4)(B) with respect to the temporary restraining order and provisional relief sought by this Motion.

**G.      Waiver of Federal Rule of Civil Procedure 65(c)**

63.     Bankruptcy Rule 7065 expressly provides that "a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)." To the extent Rule 65 of the Federal Rules of Civil Procedure applies, the JPLs believe that the security requirements imposed by Rule 65(c) are

27

75080616.13

unwarranted under the circumstances and request a waiver of such requirements pursuant to Bankruptcy Rule 7065.

## V.
## BASIS FOR EMERGENCY RELIEF

64.     Pursuant to Bankruptcy Rule 6003, the JPLs request emergency consideration of this motion. The JPLs seek emergency provisional relief under §§ 105(a) and 1519, staying execution against the Debtor's assets until the Court's consideration of the JPL's chapter 15 petition filed contemporaneously with this Motion.  Prior to entry of a recognition order, the Debtor does not automatically have the protections of the Bankruptcy Code, including the automatic stay provisions. Emergency provisional relief is necessary to prevent creditors and other parties from commencing or continuing litigation or taking action against the Debtor's assets in the United States that could prejudice and disrupt the Cayman Proceeding, thereby interfering with the JPLs' ability to conduct operations and the reorganization of the Debtor.

## VI.
## NOTICE

65.     Notice of this Motion will be provided to (a) all persons authorized to administer the Cayman Proceeding, (b) the Office of the United States Trustee for the Northern District of Texas, (c) all entities against whom provisional relief is sought (namely, the Prospect Debtors, the holders of Insured Claims and the Reinsurers), (d) all parties to litigation in the United States to which the Debtor is a party.

## VII.
## NO PREVIOUS REQUEST

66.     No previous request for the relief sought herein has been made to the Court or any other court.

75080616.13

# VIII.
# CONCLUSION

WHEREFORE, the JPLs respectfully request that the Court enter an order, substantially in the form attached hereto as **Exhibit A**: (a) granting the relief requested herein and (b) granting such other and further relief as may be just and proper.

Dated: May 5, 2026
      Dallas, Texas

Respectfully submitted,

*/s/ Vienna F. Anaya*

**JACKSON WALKER LLP**
Vienna F. Anaya (TX Bar No. 24091225)
2323 Ross Avenue, Suite 600
Dallas, TX 75201
Telephone: (214) 953-6000
Facsimile: (214) 953-5822
Email: vanaya@jw.com

**JACKSON WALKER LLP**
Emily Meraia (TX Bar No. 24129307)
1401 McKinney Street, Suite 1900
Houston, TX 77010
Telephone: (713) 752-4200
Facsimile: (713) 752-4221
Email: emeraia@jw.com

*and*

**HONIGMAN LLP**
Glenn S. Walter (MI Bar No. P79853)
2290 First National Building
660 Woodward Avenue
Detroit, Michigan 48226-3506
Telephone: (313) 465-7712
Facsimile: (313) 465-7713
gwalter@honigman.com

*Counsel for the Authorized Foreign Representatives*

29

75080616.13

## CERTIFICATE OF SERVICE

I certify that on May 5, 2026, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

/s/ *Vienna F. Anaya*
Vienna F. Anaya

75080616.13